UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
GALLAGHER'S NYC STEAKHOUSE          :
FRANCHISING, INC.,                  :
                                    :
                Plaintiff,          :        11 Civ. 1456 (THK)
                                    :
       -against-                    :
                                    :        **MEMORANDUM OPINION AND**
                                    :               **ORDER**
NY STEAKHOUSE OF TAMPA, INC.,       :
JAMES TULLY, AND MITCHELL J.        :
WALKER,                             :
                Defendants.         :
                                    :
-------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Gallagher's New York City Steakhouse Franchising, Inc. ("Gallagher's") brings this action for breach of contract and breach of personal guarantee against New York Steakhouse of Tampa, Inc. ("Tampa Gallagher's"), a former franchisee, and James Tully ("Tully") and Mitchell J. Walker ("Walker"), guarantors of the franchisee.   The parties consented to trial before this Court, pursuant to 28 U.S.C. § 636(c). Pretrial discovery has been completed and Plaintiff has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.   Defendants, collectively, oppose the motion for summary judgment and have filed a motion for leave to amend the Answer and counterclaim instanter.

For the reasons that follow, Plaintiff's motion for summary judgment is granted and Defendants' motion for leave to file an amended Answer and counterclaim is denied.

## BACKGROUND

Plaintiff, Gallagher's, a New York corporation with its principle place of business in New York City, is a franchisor of Gallagher branded full-service steakhouse restaurants. (See Complaint ("Compl.") at 2 ¶ 2.) On August 29, 2006, Plaintiff and Tampa Gallagher's entered into a Franchise Agreement ("Franchise Agreement" or "Agreement") for the operation of a Gallagher's Steakhouse in Tampa, Florida. (See Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1") at 1 ¶ 1.) In conjunction with the Franchise Agreement, Tully and Walker signed a personal guarantee, in which they "jointly, individually and severally . . . absolutely and unconditionally guarantee[d] the payment of all amounts and the performance of all of the covenants, terms, conditions, agreements and undertakings contained and set forth in [the] Franchise Agreement and in any other agreement(s) by and between Franchisee and Franchisor." (Guarantee of Gallagher's NYC Steakhouse Franchising, Inc. Franchise Agreement ("Personal Guarantee"), attached as Exhibit ("Ex.") A to Compl. at 1.)

The Franchise Agreement required payment of a continuing royalty in the amount of 5% of the prior month's gross sales for Tampa Gallagher's. (See Pl.'s 56.1 at 2 ¶3; Gallagher's NYC Steakhouse Franchising, Inc. Gallagher's Restaurant Franchise Agreement ("Franchise Agreement"), attached as Ex. A to Compl. at

2

5 ¶ 5.02.)   For past due payments owed to Gallagher's, the Agreement required payment of interest at a rate of 4% above the prime rate of interest on the first day of each month that an amount was past due, as published in the Wall Street Journal. (See Pl.'s 56.1 at 2 ¶ 4; Franchise Agreement at 7 ¶ 5.08.)   The Agreement also included a provision for attorneys' fees, entitling Gallagher's to recover from Defendants "reasonable attorneys' fees, experts' fees, court costs and all other expenses of litigation, if [Gallagher's] prevail[s] in any action instituted against [Defendants] to secure or protect [Gallagher's] rights under this agreement. . . ."   (See Pl.'s 56.1 at 4 ¶ 15; Franchise Agreement at 64 ¶ 29.01.)

It is undisputed that Tampa Gallagher's breached the Franchise Agreement by failing to make continuing royalty payments to Plaintiff. (See Pl.'s 56.1 at 3 ¶ 9; Defendants' Local Rule 56.1 Statement ("Defs.' 56.1") at 2 ¶ 9.)   Consequently, Plaintiff terminated the Franchise Agreement on November 17, 2010.   (See Pl.'s 56.1 at 3 ¶ 10; Compl. at 7 ¶ 28.)   Plaintiff entered into a limited term franchise agreement with Tampa Gallagher's and Tully to allow Tampa Gallagher's to remain open through January 2, 2011. (See Pl.'s 56.1 at 3 ¶ 11.)   This limited term franchise agreement required payment of royalties to Plaintiff at the same rate as in the original Franchise Agreement.   (See id. at 4 ¶ 14.)   While

operating under the limited term franchise agreement, Defendants continued to fail to pay royalties. (See id. at 4 ¶ 16; Defs.' 56.1 at 2 ¶ 16.)

Plaintiff subsequently filed this action against Tampa Gallagher's for breach of contract, and against Tully and Walker for breach of the personal guarantee. Plaintiff contends that Defendants owe $106,393.27 in past due royalty payments (see Pl.'s 56.1 at 5 ¶ 17), $11,774.57 in interest on the past due royalty payments (see id. at 5 ¶ 18), and $31,256.50 in attorneys' fees (see id. at 5 ¶ 19). Defendants concede that they breached the Franchise Agreement and owe Plaintiff $106,393.27 in past due royalty payments (see Defs.' 56.1 at 2 ¶ 17) and $11,774.57 in interest (see id. at 2 ¶ 18); Tully and Walker admit that they are personally liable under the personal guarantee (see Defs.' 56.1 at 1 ¶ 8). Defendants assert, however, that Plaintiff has not yet prevailed in this action and that they do not owe Plaintiff attorneys' fees (see id. at 2 ¶ 19).

Furthermore, Defendants contest the total amount owed to Plaintiff. (See id. at 2 ¶ 20.) Specifically, Defendants maintain that the damages they owe Plaintiff must be offset by the damages Defendants incurred as a result of Plaintiff's alleged breach of the Franchise Agreement. (See id. at 2 ¶ 21.) That breach, however, is not alleged in the Answer or any counterclaim.

4

According to Defendants, by the middle of 2009, Tampa Gallagher's had lost about two million dollars.   (See Declaration of James Tully in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Tully Decl.") at 2 ¶ 5.) In an effort to "save the restaurant," Defendants pursued a catering agreement with Tampa Bay Arena ("Tampa Bay Arena" or "Arena").   (See id. at 2 ¶ 6.)   Defendants allege that they discussed this opportunity with Gallagher's CEO and other executives, who said the opportunity sounded "excellent" and encouraged Defendants to pursue the opportunity. (See id.) Based on Gallagher's alleged approval, Tampa Gallagher's entered into a sponsorship agreement with Tampa Bay Arena to cater Gallagher's food to the Arena in exchange for a certain percentage of the revenues from sales as well as promotional marketing. (See id. at 2 ¶ 8.)   The sponsorship agreement was for a period of five years and required an initial payment of $100,000, which Tampa Gallagher's made.   (See id. at 2 ¶ 9.)   In connection with the sponsorship agreement, Tampa Gallagher's entered into a licensing and requirements agreement with Tampa Sportservice, Inc., which runs concessions at the Tampa Bay Arena, for Tampa Sportservice to be the purchaser and server of Tampa Gallagher's catered food. (See id. at 2 ¶ 10.)

Soon after Tampa Gallagher's entered into the sponsorship

5

agreement and the licensing and requirements agreement, on October 28, 2010, Plaintiff sent Tampa Gallagher's a cease and desist notice to immediately terminate its catering at Tampa Bay Arena. (See id. at 2 ¶ 11.)  According to Defendants, Plaintiff's notice stated that Defendants were operating a separate Gallagher's restaurant at the Tampa Bay Arena in violation of the Franchise Agreement.  (See id.)  Plaintiff sent a similar cease and desist notice to Tampa Bay Arena, which in turn suspended Tampa Gallagher's business at the Arena.   (See id. at 3 ¶ 12.) Defendants allege that as a result of this suspension, Tampa Gallagher's lost its initial $100,000 payment to the Arena and future profits.  (See id. at 3 ¶ 13.)

On October 12, 2011, Plaintiff filed the instant motion for summary judgment on its claims of breach of contract and breach of the personal guarantee.  On November 2, 2011, Defendants filed their response to Plaintiff's motion for summary judgment, essentially conceding liability and damages.  On the same day, Defendants filed a motion for leave to file an amended answer to add a counterclaim against Plaintiff for breach of contract and breach of the implied covenant of good faith and fair dealing.  The proposed counterclaim is premised on Gallagher's cease and desist notice relating to the catering arrangement at the Tampa Bay Arena. Plaintiff opposes the motion.

6

## DISCUSSION

I.   Summary Judgment on Plaintiff's Claims

A.   Legal Standard

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 98 (2d Cir. 2003).   The burden of demonstrating the absence of any genuine dispute as to a material fact rests upon the party seeking summary judgment, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970), but once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to make a sufficient showing to establish the essential elements of that party's case on which it bears the burden of proof at trial. See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (citing Celotex, 477 U.S. at 322, 106 S. Ct. at 2552).   To meet its burden, the non-movant must put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).   Facts may be set forth in affidavits, but "[a]ffidavits submitted in support of or in opposition to the

7

summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein.'" Patterson, 375 F.3d at 219 (quoting Fed. R. Civ. P. 56(c)).  Thus, hearsay and conclusory assertions which would not be admissible at trial cannot serve to create a genuine issue for trial.  In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Patterson, 375 F.3d at 219; Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

B.   Application

1.   Breach of Contract and Breach of Personal Guarantee

Under New York law,[1] a party claiming breach of contract must show (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages.  See 24/7

---

[1] The Franchise Agreement includes a forum selection clause that mandates that New York law will govern any disputes arising out of the Agreement.  (See Franchise Agreement at 65 ¶ 29.03.) There is no dispute that the substantive law of New York controls.

Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 41-42 (2d Cir. 2005) (applying New York law) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)).

    a.  Liability

    Here, there is no real dispute as to Plaintiff satisfying the elements of its breach of contract and breach of personal guarantee claims.   Defendants admit that Tampa Gallagher's entered into a Franchise Agreement and that this Agreement was properly executed. (See Defs.' 56.1 at 1 ¶¶ 1-4.)   Similarly, Defendants admit that Tully and Walker entered into an agreement to personally guarantee Tampa Gallagher's obligations under the Franchise Agreement.  (See id. at 1 ¶¶ 4-8.)   Defendants further admit that Tampa Gallagher's entered into a limited term franchise agreement that allowed Tampa Gallagher's to continue operating as a Gallagher's franchise from November 17, 2010 to January 2, 2011.   (See id. at 2 ¶¶ 11-15.) Finally, Defendants admit that Tampa Gallagher's breached the Franchise Agreement (see id. at 2 ¶¶ 9-10) and that Tully and Walker breached the personal guarantee (see id. at 2 ¶ 20), and that they owe continuing royalties to Plaintiff in the amount stated by Plaintiff (see id. at 2 ¶¶ 16-18).   Defendants have not produced any evidence to show a disputed issue of material fact regarding Plaintiff's claims.   As there is no disputed issue of

9

material fact, Plaintiff is entitled to summary judgment on its claims for breach of contract and breach of the personal guarantee.

    b. <u>Damages</u>

Defendants concede that they owe Plaintiff $106,393.27 in past due royalty payments (<u>see</u> <u>id.</u> at 2 ¶ 17) and $11,774.57 in interest (<u>see</u> <u>id.</u> at 2 ¶ 18). Nevertheless, Defendants contend that there is a genuine issue of fact as to the amount of damages Defendants owe Plaintiff and that this issue bars summary judgment. In their response to Plaintiff's motion for summary judgment, Defendants contend that Plaintiff breached the Franchise Agreement[2] and the implied covenant of good faith and fair dealing by sending the cease and desist notice and interfering with Tampa Gallagher's catering agreement with the Tampa Bay Arena, causing Defendants

---

[2] It is not clear from Defendants' proposed counterclaim whether the breach of contract claim arises from the Franchise Agreement or an alleged oral agreement whereby Gallagher's provided oral support of Defendants' plan to provide catering services to the Tampa Bay Arena. (<u>See</u> Proposed Amended Answer and Counterclaims ("Proposed Am. Answer"), attached as Appendix B to Defendants' Motion for Leave to Amend the Answer and Counterclaim <u>Instanter</u> at 5-6 ¶¶ 6-16.) In the Limited Term Franchise Agreement, Defendants agreed that the "Franchise Agreement was properly terminated effective November 17, 2010." (Agreement Regarding Grant of Limited Term Successor Franchise Agreement ("Limited Term Agreement"), attached as Exhibit C to Plaintiff's Motion for Summary Judgment.) It is difficult to understand how Defendants can claim damages, including lost profits for a period of five years between 2010 and 2105, from Plaintiff's alleged breach of the Franchise Agreement, when Defendants concede that the Franchise Agreement was properly terminated.

damages.  (See Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Mem.") at 4.)  Defendants argue that the damages Defendants owe Plaintiff must be offset by the damages Plaintiff caused Defendants by this breach.  (See id. at 4.) Defendants submit a single declaration, prepared by Tully, that sets forth Plaintiff's alleged breach and the damages suffered by Defendants.  This declaration is not sufficient to defeat Plaintiff's motion for summary judgment on either liability or damages.

Leaving aside the question of whether Defendants will be able to assert a counterclaim against Plaintiff, as there is none in their Answer, and assuming that Defendants have a valid claim against Plaintiff that would entitle Defendants to damages, "'there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable.'"  Willett v. Lincolnshire Mgmt.,756 N.Y.S.2d 9, 9, 302 A.D.2d 271, 271 (1st Dep't 2003) (quoting Spodek v. Park Prop. Dev. Assoc., 693 N.Y.S.2d 199, 199, 263 A.D.2d 476, 478-79 (2d Dep't 1999)); see also Correspondent Servs. Corp. v. J.V.W. Inv. Ltd., 524 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) ("[Defendant] has no right to 'set-off' its pending disputed and unliquidated claim against [the plaintiff's] present entitlement to damages owed [under the law]."); Ferguson v. Lion Holdings, Inc., 312 F. Supp. 2d 484, 503

11

(S.D.N.Y. 2004) ("Because debts must be due to the claimant for setoff to apply, there is no right to set off a possible, unliquidated liability against a liquidated claim that is due an payable.") (internal quotation marks and citations omitted)). Moreover, "'[o]ffset claims do not bar summary judgment on . . . payment obligations, unless such obligations and the offset claims involve contractually 'dependent' promises.'" Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628 (RWS), 2004 WL 1126320 (S.D.N.Y May 21, 2004) (quoting Pereira v. Cogan, 267 B.R. 500, 507 (Bankr. S.D.N.Y. 2001)). "If two promises . . . are independent, breach of one does not excuse performance of the other." Coleman Co. Inc. v. Hlebanja, No. 96 Civ. 1288 (MBM), 1997 WL 13189, at *7 (S.D.N.Y. Jan. 15, 1997) (applying New York law). Promises within the same instrument are not necessarily related or dependent. See id. ("[E]ven if several contracts that constitute part of the same transaction are considered one contract, the different obligations within each contract may be independent and divisible."). Whether provisions within a contract are dependent is largely a question of intent and circumstances. Rudman v. Cowles Commc'ns, 330 N.Y.S.2d 33, 42, 30 N.Y.2d 1, 13 (1972) ("In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances."). The intent of the parties should be "determined from the language of the

12

contract and the circumstances under which the contract was made."
Refinement Int'l Co. v. Eastbourne N.V., 815 F. Supp. 738, 742
(S.D.N.Y. 1993) (applying New York law) (citations omitted).

Here, Defendants' proposed counterclaims for breach of
contract and breach of the implied covenant of good faith and fair
dealing are unliquidated and disputed. Moreover, although they
appear to arise from the same instrument, the proposed
counterclaims are wholly independent of Plaintiff's claims. First,
the provisions involved in Plaintiff's claim and Defendants'
proposed counterclaims are not contractually dependent. No
evidence has been presented that suggests that the breach of one
provision would excuse breach of the other provision. See Rudman,
330 N.Y.S.2d at 42, 30 N.Y.2d at 13 (explaining that provisions are
mutually dependent when the breach of one undoes the obligation
under the other). Section 5.10 of the Franchise Agreement
indicates the independent nature of the two provisions; it reads,
"[Franchisee] may not withhold payment of any Continuing Royalty .
. . on the grounds of the alleged non-performance or breach of any
of our . . . obligations under this Agreement or any related
agreement . . . ." (Franchise Agreement at 7 ¶ 5.10.) The words
of the Agreement make clear that the parties intended the royalty
payments to be independent of all other promises and obligations

13

within the Franchise Agreement.    Defendants have effectively
conceded that this was the intended meaning of the Agreement, as
they have never asserted that Tampa Gallagher's obligation to pay
the continuing royalty fees ended when Plaintiff allegedly breached
the Franchise Agreement.

A somewhat analogous situation arose in <u>Lazard Freres & Co. v.
Crown Sterling Mgmt.</u>, 901 F. Supp. 133 (S.D.N.Y. 1995).    There,
the parties entered into a contract for financial services in which
the defendant agreed to pay the plaintiff fees for certain debt
transactions, regardless of whether the plaintiff arranged the
transactions. <u>See</u> 901 F. Supp. at 134-35.  After several of these
transactions occurred, the defendant failed to pay the plaintiff,
who brought suit.  <u>See</u> <u>id.</u>  The defendant asserted counterclaims
for breach of the same contract, alleging that the plaintiff had
failed to adequately perform.  <u>See</u> <u>id.</u>  The district court held
that the defendant's counterclaim did not preclude awarding summary
judgment to the plaintiff even though the counterclaim involved the
same instrument.  <u>See</u> <u>id.</u> at 136-37.  The court reasoned: "The
Agreement specifically provided that [plaintiff]'s payment would be
apportioned according to various tasks, and was payable upon
[plaintiff]'s  performance  of  these  tasks.    Under  these
circumstances, the portion of the Agreement pertaining to the debt
restructuring was severable from the other parts of the Agreement."

14

Id. at 136.  The court entered judgment for the plaintiff, awarding
damages in the amount of the past due payments plus interest.  See
id. at 139.  Similarly, the Franchise Agreement at issue in this
case contains a provision that clearly dictates the amount of
continuing royalties due Plaintiff, and this amount is independent
of Plaintiff's performance of the Agreement.  (See Compl. Ex. A at
5 ¶ 5.02; 7, ¶ 5.10.)  Accordingly, Plaintiff's entitlement to
summary judgment on both liability and damages is not undermined by
Defendants' proposed counterclaims.

In addition, Defendants' proposed counterclaims do not present
any facts that affect Plaintiff's right to damages.  See Greenblatt
v. Prescription Plan Servs. Corp., 783 F. Supp. 814, 823-24
(S.D.N.Y. 1992) (finding no bar to summary judgment when a
"counterclaim raises no issue of fact material to a determination
of plaintiffs' entitlement [under its initial claim]").
Plaintiff's alleged breach of the Agreement—sending the cease and
desist letter and improperly interfering with Defendants' catering
arrangement—does not bear on Defendants' liability for the
continuing royalty payments for the operation of the restaurant.
Defendants concede this point by admitting their liability under §
5.02 of the Franchise Agreement and conceding the amount of damages
that resulted from the breach of § 5.02.  (See Defs.' 56.1 at 2 ¶¶
9-10, 3 ¶¶ 16-28 & 20.)  As the elements of Plaintiff's claims and

15

Defendants' proposed counterclaim do not overlap and are independent, Plaintiff is entitled to summary judgment on the issue of damages. See Greenblatt, 783 F. Supp. at 823 ("Under Rule 56 of the Federal Rules of Civil Procedure, where a counterclaim presents an independent, unliquidated claim and presents no issue of fact as to the plaintiff's claim, the entry of summary judgment on plaintiff's claim is not only proper but is required.").

C. Attorneys' Fees

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citations omitted). Section 29.01 of the Franchise Agreement provides that "[Gallagher's] shall be entitled to recover from [Defendants] reasonable attorneys' fees, experts' fees, court costs and all other expenses of litigation, if [Gallagher's] prevail[s] in any action instituted against [Defendants] . . . to enforce the terms of this Agreement . . . ." (Franchise Agreement at 64 ¶ 29.01.) The language of the provision is clear and enforceable.

Plaintiff now seeks $31,256.50 in attorneys' fees. (See Pl.'s Mot. at 6 ¶ 15.) Defendants do not contest the fee request other than to argue that awarding attorneys' fees is premature, as

16

Plaintiff has not yet "prevailed." But the Court has now granted summary judgment to Plaintiff, and, thus, Plaintiff has prevailed in this action. See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res., 532 U.S. 598, 603, 121 S. Ct. 1835, 1839 (2001) ("[A] 'prevailing party' is one who has been awarded some relief by the court . . . ."). Having prevailed, Plaintiff is entitled to reasonable attorneys' fees under the Franchise Agreement. However, Plaintiff has failed to provide sufficient documentation to establish the reasonableness of the requested fees. It is a well-established rule in this circuit "that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010)(citing New York State Ass'n for Retarded Children v. Carey, Inc., 711 F.2d 1136 (2d Cir. 1983)). Accordingly, Plaintiff must submit contemporaneous records documenting the hours and labor spent on the case, the hourly rates, and the costs incurred.

II.  Defendants' Motion for Leave to Amend the Answer

    A.  Legal Standard

"[T]he purpose of pleading is to facilitate a proper decision on the merits." United States v. Hougham, 364 U.S. 310, 317, 81 S. Ct. 13, 18 (1960) (citation omitted). Normally, "a party may amend its pleading only with the opposing party's written consent or the

court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when a court has issued a scheduling order and established deadlines for amending the pleadings, the deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(a)(4); see also Grochowski v. Phoenix Constr., 318 F.3d 80, (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b)."). Accordingly, "[o]nce the deadline for amendment in a scheduling order has passed, leave to amend may be denied 'where the moving party has failed to establish good cause.'" Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).

In determining whether good cause exists, a court must consider the diligence of the party seeking to amend. See Parker, 204 F.3d at 340 ("[A] finding of good cause depends on the diligence of the moving party."). The Court may also consider "other relevant factors, including, in particular, whether allowing the amendment . . . will prejudice [the nonmoving party]." Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007). "In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to

18

expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (1993) (internal citations omitted). Finally, a court may deny leave to amend when the proposed claim would be futile. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

B.  Application

Here, the deadline for amending the pleadings has passed. This Court issued a Scheduling Order on August 19, 2011, that required any motions to amend the pleadings to be filed by September 19, 2011. (See Order, dated Aug. 19, 2011.) Defendants filed their motion to amend the Answer on November 2, 2011, nearly two months after the deadline, and after Plaintiff's motion for summary judgment was filed.

Defendants have failed to establish good cause for their delay. First, Defendants have not been diligent in asserting their counterclaims. Defendants were aware of the factual basis for the counterclaims at the time they filed their Answer, but they failed to plead the counterclaims. (See Defendants' Motion for Leave to File Amended Answer and Counterclaim Instanter ("Defs.' Mot.") at

19

2; Answer at 4 ¶ 49.)  Defendants explain that they sought to save the expense and effort of filing their counterclaims by waiting until settlement proved futile.  (Defs.' Mot. at 3.)  This argument makes little sense, as amending the Answer to assert counterclaims would not have taken substantial time or effort, particularly since the factual basis of the counterclaims was known to Defendants when the action was commenced.  Defendant's reliance on <u>Naylor v. Rotech Healthcare, Inc.</u>, 679 F. Supp. 2d 505, 509 (D. Vt. 2009) is misplaced.  In that case, a party was granted leave to amend after the case failed to settle <u>and new "facts came to light"</u> (emphasis added).  Again, here the facts underlying the proposed counterclaims were known when the initial Answer was filed.

In addition, granting Defendants' motion would prejudice Plaintiff.  Plaintiff argues that it was unaware of Defendants' proposed counterclaims until November 2, 2011, the date on which Defendants filed their motion for leave to amend the Answer.  (<u>See</u> Plaintiff's Opposition to Defendants' Motion for Leave to File First Amended Answer and Counterclaim <u>Instanter</u> ("Pl.'s Opp'n") at 3 & 7-8.)  Defendants contend otherwise.  (<u>See</u> Defs.' Mot. at 2.)  In any event, Plaintiff did not have the opportunity to obtain discovery on the  counterclaims, and the discovery deadline has now passed.  (<u>See</u> Pl.'s Opp'n at 4.)  Granting Defendants' motion would require reopening discovery on a different set of facts than those

20

in the present pleadings.  See Ansam Assocs. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)(affirming the denial of leave to amend a pleading where "[t]he proposed . . . claims allege an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice") (internal quotation marks omitted).  This would significantly delay resolution of this dispute.  Given the delay that would result, the fact that discovery has already been completed, and the fact that Plaintiff has filed a motion for summary judgment which has been granted, granting Defendants leave to amend the Answer at this late date would clearly prejudice Plaintiff.  See Krumme v. Westpoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998) (affirming denial of a motion for leave to amend and noting that "'[a] proposed amendment . . . [is] especially prejudicial . . . [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment.'") (alteration in original)(citing Ansam Assocs., 760 F.2d at 446).

Finally, although Plaintiff did not address the merits or futility of the proposed counterclaims, on their face they appear to have very limited or no likelihood of success on the merits. See Benoit v. Commercial Capital Corp., No. 03 Civ. 5328 (PKL), 2008 WL 3911007, at *9 (S.D.N.Y. Aug. 25, 2008) (explaining that a court may deny leave to amend where the proposed claim is futile).

First, Defendants agreed that on November 17, 2010 Plaintiff properly terminated the Franchise Agreement. (<u>See</u> Limited Term Agreement.) If, as Defendants concede, the Franchise Agreement was properly terminated within a month of Plaintiff issuing the cease and desist notice regarding catering services at the Tampa Bay Arena, it is dubious that Defendants can claim lost profits damages through 2015, under the Agreement. Second, when Defendants agreed to the Limited Term Franchise Agreement, which was limited solely to continuing the operation of the Tampa Gallagher's restaurant for a six-week period of time, Defendants agreed to and signed a general release. (<u>See</u> General Release, attached as Ex. C to the Shelley Decl.) In the general release, Defendants released and discharged Plaintiff from any claims Defendants may have had prior to the signing of the release. (<u>See</u> <u>id.</u>) As the facts underlying Defendants' proposed counterclaims arose prior to the time the release was signed, it would appear that Defendants waived the right to assert these claims.

In conclusion, given Defendants' failure to demonstrate good cause for the delay in amending the Answer, lack of diligence, the prejudice to Plaintiff if leave to amend was granted, and the likely futility of the proposed counterclaims, Defendants' motion to amend the Answer to assert counterclaims is denied.

C. <u>Rule 8(c)(2)</u>

22

Federal Rule of Civil Procedure 8(c)(2) provides, "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."  The purpose of Rule 8(c)(2) is to "correct . . . technical pleading error[s]" and to "ignore improper designations in order to interpret a pleading in accordance with its true character."  Bozsi Ltd. P'ship v. Lynott, 676 F. Supp. 505, 516 (S.D.N.Y. 1987).

Defendants request that the Court rely upon Rule 8(c)(2) to convert their single affirmative defense into properly pleaded counterclaims.  (See Defs.' Mem. at 8.)  The Court declines to do so.  The affirmative defense in the operative Answer reads: "Gallagher's breached the franchise agreement by failing to provide the support services it was obligated to provide. Because of Gallagher's breach, Defendants' continuing duty of performance was excused.  In the alternative, Defendants are entitled to set off their damages against any damages Gallagher's may have."  (Answer at 4 ¶ 49.)  The affirmative defense in the Answer is not simply a misidentified counterclaim and is clearly distinct from the counterclaims Defendants now seek to assert. See Rocheux Int'l of New Jersey, Inc. v. U.S. Merhs. Fin. Group, Inc., 741 F. Supp. 2d 651, 660 (D.N.J. 2010) ("The question

23

before the Court, then, is whether Defendants' proposed

modification redresses a simple mistaken designation, for which

Rule 8(c)(2) provides the appropriate standard for relief, or

whether Defendants' modification presents a new claim . . . .").

First, the alleged failure of Plaintiff to provide services under

the Franchise Agreement, thus excusing Defendants' performance

was clearly abandoned as an affirmative defense.  Defendants do

not claim that their obligations under the Franchise Agreement

were excused; indeed, they concede that their failure to pay

continuing royalties was a breach of the Agreement.  Second, the

affirmative defense fails to set forth any facts that resemble in

any way the proposed counterclaims.  The affirmative defense does

not reference Defendants' right to cater under the Franchise

Agreement, the alleged conversations between Defendants and

Plaintiff's employees regarding Tampa Gallagher's providing

catering services at the Tampa Bay Arena, or the cease and desist

notices sent by Plaintiff, all of which form the factual basis of

Defendants' proposed counterclaims.  The affirmative defense,

accordingly, fails to provide Plaintiff with any notice of the

proposed counterclaims, making Rule 8(c)(2) inapplicable.  See

Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ., 769

F. Supp. 2d 403, 415-16 (S.D.N.Y. 2011) (invoking Rule 8(c)(2)

where the plaintiffs were "on notice" of defendant's proposed

24

counterclaims).  Because the proposed counterclaims assert new claims, which the affirmative defense did not assert, Defendants are precluded from asserting their proposed counterclaims in this action.

### CONCLUSION

For the reasons set forth above, Plaintiffs are entitled to summary judgment on their claims for breach of contract and breach of the personal guarantee.  Defendants are therefore jointly and severally liable for damages in the amount of $106,393.27, plus interest in the amount of $11,774.57.  By no later than December 16, 2011, Plaintiff must submit additional documentation to enable the Court to determine the reasonableness of the requested attorneys' fees.  Any opposition by Defendants must be submitted by December 23, 2011.  Judgment will not be entered until the attorneys' fees are determined.[3]

---

[3]Defendant asserts that the Court should withhold entry of final judgment under Federal Rule of Civil Procedure 54(b).  (See Defs.' Mem. at 7.)  Rule 54(b) provides, "When an action presents more than one claim for relief. . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay."  As the Court has denied Defendants' motion for leave to amend, see infra, and has granted summary judgment to Plaintiff on all of Plaintiff's claims, there is no bar to entry of a final judgment once the attorneys' fees issue is resolved.

So Ordered.

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: December 5, 2011
       New York, New York